H12563 Tunkle v. Reliastar Absolutely. And is it kidda? Kidda. Whenever you're ready, it's fine. Well, it's a very intimate setting here. It's just us. Apparently, a lot of people want to hear about chicken. Yeah. Whenever you're ready. Thank you. Good morning, Your Honors. May it please the Court. My name is Matthew Pita. I represent the plaintiff and appellant Aloysia Tunkle. As you noted earlier, Your Honor, you're familiar with the facts here, and I won't go into them in great detail. And to the extent we agree with the district court on something, it's the way she began her analysis section. And that is, the contested issue here is a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. It's a narrow one. And in fact, I think the narrow issue here on the appeal is even narrower, where we're asking, if the documents that support an insurer's exclusion simply do not exist, is summary the evidence is that the insurer's exclusion from their non-existence can be explained through simple common sense. And that is exactly what we have here. We believe the district court erred for three reasons that I'd like to go over today. The first is that its finding that there was no error in Reliastar's decision is not supported by substantial evidence, which is the standard under Blankenship's arbitrary and capricious standard, which undisputedly applies here. It's not supported by the case law that the district court cited in her decision. And again, I'd like to go into the common sense part later because it seems that multiple district courts within this circuit are relying on a Seventh Circuit opinion for when discussing the arbitrary and capricious standard and the substantial evidence standard are allowing district courts to evaluate common sense or consider common sense, which, although outside the administrative record, is something that Congress has never told the courts it can't use. It seems, I'll go first to the substantial evidence. Judge Newsom, you look like you're about to ask a question. No, no, no, no, no, please. Going to the substantial evidence part, the district court's opinion appears to have, respectfully, confused two very important pieces of evidence in the record. One are the pay summaries for Dr. Tunkel. The other are his administrative productivity reports. Throughout the opinion, the district court routinely refers to the pay summaries as the hours that he logged or reported. The words logged or reported are used multiple times in the opinion, and candidly, I think at one time I even used the word reported or logged in my brief, probably in the wrong context. But the fact cannot, it simply cannot be disputed that nothing on the pay summaries details any work whatsoever. The only thing it says is how much he was paid for a particular period. The administrative productivity reports, by contrast, not only say, and I'll note this at the outset that I didn't put this fact in my brief but realized it while prepping for the oral argument, the administrative productivity reports say that every day that Dr. Tunkel worked, he worked for 12 hours a day. It itemized certain procedures that he did when he saw specific clients, which fluctuated in manners that are completely inconsistent with what the payroll reports say, but in a manner that's completely consistent with what he provided Reliostar, with what his company's human resource person supplied Reliostar, with what his business partner supplied Reliostar, and what the 21st century's human resources person, in one of her emails she says, I checked with the practice manager at the local location and they confirmed this to be true also. There's simply, respectfully, not a way to look at the administrative productivity reports and the salary, the pay summaries if you will, and suggest that Dr. Tunkel, as a matter of law, was conclusively not working 30 hours a week during the COVID pandemic. So here's the question for me. I tend to agree with you about that it's not, that if we were just looking at this and saying the NoVo review, is there a question of fact, but how can we say that he ensures the termination of arbitrary and capricious, given that there's at least some evidence that supports their position? So, as you know, arbitrary and capricious in this context means a little bit different than what it would mean sort of in regular tort law. Here, arbitrary and capricious says, is there a reasonable basis for the decision based on facts known at the time the decision was made? So here, Dr. Tunkel's claim was originally denied in August, October, excuse me, of 2021, and his appeal was denied in February of 2022. I know that when we talk about COVID five years out, maybe some of our memories get a little bit hazy, but in October of 2021, it should not have surprised anybody, anywhere. I mean, finding common ground to agree on in this country is difficult, admittedly, but no one would say, suggest that it was unreasonable for a company not to have procedures in place to document what everyone was doing during a global pandemic, when nobody was keeping records, when people were told one day, don't go to work and didn't come back for several months. And in this case, Dr. Tunkel was working as a first responder. His logs, which I'm referring to as the administrative productivity reports, still say that he was there 12 hours a day, every day that he came in. It clearly averaged 30 hours a week moving forward, if not more. What's the citation record for that? Your Honor, it's okay. May I give it to you on my rebuttal time? Because I have it, it's just not on my sheet. I know in the district court's opinion, it gives sites to both the administrative productivity reports and the pay summaries, but I'll give the detail in a moment. What I was getting at was, there's no way that anybody would suggest that, when we look at other cases that we rely on in the ERISA context, in which summary judgments are granted, it's someone who can't demonstrate they're at work. The records affirmatively show they weren't being paid. There is a document of leave of absences. There's affirmative testimony saying they weren't there. That's not what we have here. We have debates that are in question are March 15th to May 23rd, and it was March 11th that the World Health Organization declared COVID a pandemic. His office manager, the HR representative, and his colleague, and Dr. Tunkel himself, all said, I cut my salary so that my employees could get paid while I was still working. That is reflected exactly in the payroll reports, and there's nothing in the payroll reports that discuss anything except the amount of money he was paid. The only evidence about work that he was actually doing come in the administrative productivity reports. To answer your question more directly, Your Honor, is there any evidence that supports Reliostar's decision? Perhaps. But the standard is, it doesn't have to be a preponderance, but it has to be more than a scintilla. And what it seems that Reliostar and the district court did was find the numbers in the documents that support the decision that they wanted to reach and simply say, well, because these numbers say you were only working nine and a half hours every two weeks, that's what we're going to believe. Now you come forward with documents to show me what you were doing during that time. And there's nothing in the record that requires Dr. Tunkel to do that. And the question is, under those circumstances, when the documents simply don't exist, is summary judgment the appropriate remedy? The documents did exist. You're saying they're incomplete. Your Honor, the documents that Reliostar is saying that they asked for that Dr. Tunkel didn't provide, and this is in the district court's opinion, it's multiple paragraphs long. Why didn't he come forward with credit card bills showing what he was doing that day? That was after the employer provided whatever documents it had, which admittedly were not right, but they were the documents it had, which showed he was not working more than nine and a half hours. So that gets in the mind of the administrator, and then the district court said, well, didn't that shift the burden that they show that those were incomplete or inaccurate? And isn't there anything, anything that you can show, work records, schedules, diaries, anything, until of any evidence, that can show that there's something more than what's in the actual records of the employer? And I think that's where the problem arose. Other than his unsworn letters, two from him and one from his colleague, not a single paper, and I think that's the concern of the district judge. Your Honor, I definitely think it was a concern of the district judge. One thing the district judge did not mention, and I realize I'm close to being out of time, so if we could just briefly finish. Relia Star hired outside accountants to review all the documents that are in the administrative record that we're discussing today, and its professional financial analysts said that it was inconclusive as to whether those documents demonstrated that he was working those hours or not. But it's evident, both from the statements from the HR representative, from the statements from their accountant, and even from the understanding of Christopher Mullen, who is the person handling their appeal, that the pay records are not hours worked. And if you look at the context and you read those emails and the order in which they were sent, they're asking, do you have logs of time worked? Kara MacLeod says, yes, I sent those to you. The logs of time worked are the administrative productivity reports. Your Honor, I will reserve my time for rebuttal. Very well. Thank you very much. Ms. Furman, let's hear from you. Good morning, Your Honors. The APOLE is only challenging the district court's ruling on the defendant's motion for summary judgment, not the denial of their motion for summary judgment. The plaintiff concedes that Relia Star was vested with discretionary authority and that Relia Star was not operating under a conflict of interest. So the issue, as Your Honors have identified already, is the issue of whether or not there is a reasonable basis based on the evidence before the administrator to support the district court's affirmance of Relia Star's determination. The plaintiff argues and admits that his claim depends upon an alleged lack of evidence as to his work activities from which he says the court erred in upholding the denial. The plaintiff points to the productivity reports, which only reflect partial hours for select activities. These productivity reports, Your Honor, you asked about the record citation. I believe you're referring to the document, the appellate record citation, page 109. Relia Star's citation is page 70. The reference to 12 hours, I don't believe that's the reason for citation of those documents. Essentially, those documents reflect only surgical and appointment and it states a start time at 7 o'clock in the morning and an end time at 7 p.m. and then says total hours, 12 hours. So I don't believe there's anything in there indicating the 12-hour workday, just that that's the time period captured in those records. Significantly, the plaintiff has identified that those productivity reports by his own statements are not a complete record of his activities and that is because they only reflect as a vindicated surgery and appointment. So Relia Star did not have the ability to rely exclusively upon those productivity reports and in fact looked at the entirety of the record that was presented to it, but that included the payroll records that were provided at the outset by the employer when Relia Star approached the documentation as to Dr. Tunkel's work activities. And significantly, there are multiple communications from Relia Star and the employer where the extent of Dr. Tunkel's work activities were discussed and were repeatedly, clarification was sought and the employer repeatedly stated that Dr. Tunkel was working full time up until March 15th, that he was not working full time from March 15th until May 24th, that they had no records to substantiate that he was working full time during that time period. On pressing, Relia Star's agents, when contacting the employer, repeatedly said, can you talk to the practice manager? Can you get us an explanation of what was going on there? And after multiple communications back and forth, where each time the employer continued to repeat that the evidence did not support that he was working full time during that time period, but that he resumed working full time according to their records as of May 24th, Relia Star had that information from the employer in terms of those representations repeatedly from the employer representing that Dr. Tunkel had ceased working full time during the critical time period and therefore the pre-existing condition exclusion that became applicable as a result of that determination was the appropriate result. When did the letters, when were the letters written? So Dr. Warner wrote a letter saying that he was working full time, there were two letters from Dr. Tunkel and there was a letter from Dr. Warner. I believe Dr. Tunkel's first letter was during the initial claim period, but those letters were essentially trying to explain additional activities that were not captured on the records, but in response to all of those submissions, the council, Relia Star asked that Dr. Tunkel provide specifics and what they kept saying to Dr. Tunkel and his council was understand you don't, you're saying these records aren't complete, but you haven't ever stated anywhere where there's evidence of full time employment and what we do have in the records from your employer is evidence and statements showing that you were not working full time. So we understand that you're saying those records that we do have don't capture all of your work activities, but you've not come forward and said specifically what activities demonstrate full time work activities during those critical periods of time. Your Honor, that's not the representation even according to those records in terms of they identify surgical procedures by a number and then there's some factor that's not disclosed on these records in terms of how many hours were allocated to those different surgical procedures, but you end up with a total number of hours. So I could not discern a specific surgical unit that was applied when I look at those records. It's not consistent. So you can't, you probably would need to know which specific surgical activities were performed and how much time had been allotted. But what Dr. Tunkel had already told Relia Star was those are merely productivity reports. Those are scheduling reports that tell you what activities were scheduled and probably used for different purposes in terms of assessing the doctor's productivity, but they didn't capture time that he claims he was engaged in in doing other work such as completing medical records, making phone calls, doing rounds, although that would The issue that I feel like is a problem is if someone like a doctor I mean I don't have any records of how much time I spend. I mean you may build by the hour so you may have lots of records. Unfortunately I do. I mean they're a professional like a doctor. They don't have time records. They're not punching in and out of the clock. So what is the category or universe of records that the insurance company would reasonably expect in a situation like this? Your Honor, I think that is a significant fact because that's what Relia Star was saying in terms of there should be something, give us something in terms of you're saying that you're traveling. There's no indication of any mileage logs, which is if you're traveling and that's part of your work activities. He said he was traveling between clinics. Generally, and I've seen this in multiple cases, there are appointment logs that show what the doctor's activities were. There's some kind of appointment log that shows the doctor was in surgery these days and had office hours these days and you're able to generate some kind of documentation to show that he was working full time. And what we're hearing here is that Dr. Tunkel had claims to have been working full time during a time period when the other argument that we are hearing with common sense arguments and so forth is that this was in the midst of a pandemic and no employees were working so he had to pay out of his pay to pay the other employees. So there's some inconsistency in the plaintiff's argument when we're hearing that this was the onset of this pandemic, everything was shut down, no records were being kept, then why is it surprising that Dr. Tunkel as well was not working full time? That's consistent with the plaintiff's own argument that a pandemic was afoot and activities were not as they had been prior to that time and as they resumed with the reopening of facilities. So I think it's significant the employer stated, I do not have information to support Dr. Tunkel working full time. I mean that the employer has the obligation to substantiate information, work activities of the employee as to eligibility for coverage. So ReliASTAR has the right and look to the employer to provide that information. They have every right to rely upon that information as accurate. The practice manager could not recollect any specific reason for the reduction in hours. Ms. Mayer, Genesis Care's Vice President noted that the plaintiff was listed as a full time employee consistent with his employment status prior to his termination. There's no dispute he was full time at the time that he ceased working in September or August of 2020. The issue was his employment status during this critical period March through May. The district court found that ReliASTAR's decision was correct. So it did not go forward and make a reasonable determination. We maintain that even if the court were to find that the decision was not correct that this court is able to uphold the decision of the district court, ReliASTAR's decision to deny the benefits claimed because there is clearly a reasonable basis in these records, in the record, and the record demonstrates that Dr. Tunkel and his counsel were given a full and fair opportunity to develop the record. The issue was properly raised in the denial letter. It was fully pursued and examined over months and months of time during the appeal. Even after the appeal, when Dr. Tunkel submitted the further statement from the Vice President, ReliASTAR considered it and responded. So this is a situation where ReliASTAR has given every opportunity for the claimant, the employer, to substantiate the claim if it was payable and the evidence supports that it was not. Therefore, this court can uphold the decision of the district court and affirm. I have any time if you have any questions, but I'm finished with the points I wanted to raise. Okay. Very well. Thank you so much. Mr. Akita, you've got five minutes of rebuttal time remaining. Thank you, Your Honors. Justice Brasher, the answer to your location in the record, the productivity reports are at ECF 56-1, pages 370-82, and they're in our appendix. And the payroll records are pages 527-750, also in ECF 56-1. And how do those productivity reports establish the view of the claimant? We look at the productivity reports for every day. It begins start time, 7 a.m., end time, 7 p.m., total time, 12 hours. And that's for every day that he worked. And I think this is important because ReliASTAR doesn't just provide long-term benefits coverage to really busy doctors. He could work at a really unsuccessful clinic where he shows up every morning at 7 a.m. and leaves at 7 p.m. and doesn't see any patients. That could certainly be the case during a COVID pandemic when people aren't going to the doctor. Or it could be the case when he's treating not his patients, but he is, as he said, volunteering in the community as a first responder. He's not documenting his mileage because he's not seeking reimbursement from the place. He's giving all of his money to his co-employees or his staff that can't work. He's not documenting billing patients because they're not his patients. He said he was operating as a first responder. There's nothing to suggest that he wasn't other than the fact that he was being paid less. He's operating as a first responder. Is he an employee? I don't think that that question is answered in the record as to whether they were coming to his particular clinic or if he was going off-site. But at the end of the day, he says, that's what I was doing. I was working as a first responder in my capacity as a surgeon. The other thing that I would like to just address with respect to my friend's comments is there is a very clear difference between the emails from Tara MacLeod, who is a human resources analyst for the large company called 21st Century Orthopedics. And the people that she is contacting in his office, who she refers to as the program managers. So if you look to page 56.1 or ECF 56.1 at 60, Tara MacLeod writes back to Christopher Mullins and says, I've received the following information from the office team in relation to Dr. Tunkel's claim involving reduced pay. Beginning in March 2020, we reduced his salary just to cover benefits due to COVID. His assertion below is correct in that he could not continue to cover the practice overhead, including staff. He was also having his profit share pulled to the profits and losses to help cover, as documented in the attached email, attached as a copy of our profit and loss statement showing that he was running at a loss during this time. Yes, before this email, did Ms. MacLeod, who was not boots on the ground in Dr. Tunkel's clinic, say, yeah, I don't have any knowledge of why he was being paid less? Of course they did. Because that was a true statement. And then when given the opportunity to contact someone at Dr. Tunkel's clinic, she provided that answer. But they ignore that answer. They ignore the statement that he was working 12 hours a day. They ignore the statements from their own outside accountants, who say that it's completely inconclusive as to whether he was working that time or not. And if their outside accountant says this is inconclusive, and the story that the plaintiff is advocating is supported by some evidence, has Reliostar conclusively established that they're entitled to a summary judgment? And we respectfully submit that the answer is no. And I think that if you look at the other cases, even the ones that the district court cites, for example, it relies on a case called Boyson v. Illinois Tool and Works Incorporated. Let me stop and say, conclusively proved summary judgment? Are you suggesting that the summary judgment in a recent case like this is the same standard as a typical summary judgment? Or if you have a student back, you can't have a summary judgment. But I thought in the new review, you were kind of sitting as a quasi-finder of the facts. That is absolutely correct. It doesn't have to be conclusive. It's not the same as in a regular, say, tort or contract case. But the courts in this circuit continue to recite the Rule 56 rule of when you are entitled to a summary judgment. This was not a motion, this wasn't a bench trial. This wasn't a Rule 52 motion on stipulated facts. This is them saying, everything in the record supports our decision to exclude coverage. And exclusion is something that they undisputedly have the burden of proof on. I'm inconsistent with the de novo review, which is the first step. May I briefly respond? Yeah, you can finish. There has to be substantial evidence from them proving their exclusion. The only evidence that they can offer are payroll records that have no work described on them. So even assuming that it doesn't have to be conclusively established, if the actual standard of review, which this court reiterated in 2022, is that there has to be enough evidence. Forgive me if I have the verbiage in front of me. There has to be substantial evidence so that a reasonable person could arrive at the same conclusion. Could a reasonable person look at these administrative productivity reports, the statements from Dr. Tunkel and Dr. Warner, the emails from his staff which recount conversations with the people with the boots on the ground, and say, yeah, he probably wasn't working. He was probably not working at all during COVID, and there's nothing that substantiates it. Respectfully, Your Honors, if there's a question here, we respectfully submit that remand to the claims administrator is a possible option, or if this court were to conclude that they completely failed at their burden, it could just simply remand for the rest of the trial, which would address whether he was entitled to the benefits when the exclusion is not at issue.  That case is submitted, and we're in recess until 9 a.m. tomorrow morning.